# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MERCHANTS RETAIL PARTNERS MANAGEMENT, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:24-cv-00365-SGC ) |
| HENRY METCALF, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

This is a business dispute brought by Merchants Retail Partners Management, LLC, and Leitbox Portfolio Partners, LLC, against Henry Metcalf, Hearthfire Capital, LLC, and Hearthfire Holdings, LLC.[2] It is before the court on the defendants' motion to dismiss for lack of personal jurisdiction, made under Rule 12(b)(2) of the *Federal Rules of Civil Procedure*. (Doc. 4).[3] For the reasons stated below, the court will grant the motion and dismiss this action without prejudice.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

[2] The court refers to Merchants Retail Partners Management, LLC, and Leitbox Portfolio Partners, LLC, collectively as "the plaintiffs." The court refers to Hearthfire Capital, LLC, and Hearthfire Holdings, LLC, collectively as "the Hearthfire defendants," and to the Hearthfire defendants and Metcalf collectively as "the defendants."

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

I.      **Procedural History**

The plaintiffs commenced this action in the Circuit Court of Jefferson County, Alabama. (Docs. 1-1, 1-2). The defendants removed the action to this district court, identifying diversity of citizenship as the basis of subject matter jurisdiction. (Docs. 1, 11). The defendants then filed the pending motion to dismiss for lack of personal jurisdiction. (Doc. 4). The parties have briefed the motion fully and presented testimony and oral argument to the court. (Docs. 4, 16, 17, 18).

II.     **Standard of Review**

The plaintiff bears the burden of establishing personal jurisdiction. *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). "[T]he plaintiff must eventually – by the close of evidence – establish personal jurisdiction by a preponderance of the evidence." *Id.* However, when the defendant challenges personal jurisdiction with evidence during the pretrial phase, the degree of proof the plaintiff must produce for the case to proceed depends on whether the court decides the issue on the papers or, instead, exercises its discretion to conduct an evidentiary hearing. *Id.*

If the court decides the issue on the papers, the plaintiff simply must produce evidence sufficient to defeat a motion for judgment as a matter of law (also known as a motion for directed verdict) made under Rule 50(a) of the *Federal Rules of Civil Procedure*. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). In

applying this standard, the court accepts as true factual allegations contained in the complaint that remain uncontroverted by the defendant's evidence, *id.*, construes all reasonable inferences in the plaintiff's favor where the factual allegations contained in the complaint and the defendant's evidence conflict, *Diamond Crystal Brands, Inc. v. Food Mover's Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010), and considers whether a reasonable jury could find for the plaintiff on the personal jurisdiction issue, FED. R. CIV. P. 50(a). If so, the court must rule in the plaintiff's favor and find the exercise of personal jurisdiction over the defendant is proper. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

If the court exercises its discretion to conduct an evidentiary hearing, the plaintiff must establish personal jurisdiction by a preponderance of the evidence "right away, during the pre-trial phase." *AcryliCon USA*, 985 F.3d at 1364. Following an evidentiary hearing, the court decides the personal jurisdiction issue by determining the credibility of witness testimony, weighing the evidence, and finding jurisdictional facts. *Id.*

Here, the court conducted an evidentiary hearing on the pending motion to dismiss for lack of personal jurisdiction. (Doc. 18). Metcalf, William A. Leitner, and Sergio Altomare testified at the hearing. The court makes the findings of fact set out below based largely on the testimony of these witnesses. The court found Metcalf and Altomare to be credible witnesses and, to the extent their testimony

conflicted with the testimony offered by Leitner, the court credits the former over the latter.

## III.   Findings of Fact

The plaintiffs locate, develop, and manage public self-service storage facilities nationwide. Leitner is the sole member and sole manager of each plaintiff. Leitner is a resident and citizen of Alabama, and each plaintiff has its main office in Alabama.

Leitner reached out to Metcalf in early August 2022 about working for the plaintiffs. Metcalf is a resident and citizen of Utah. He was in early August 2022 and remains so today. Metcalf accepted a position as the plaintiffs' Financial Director on August 10, 2022.[4] From his home office in Utah, he executed an agreement that outlined his job responsibilities (the "employment agreement") and an agreement the plaintiffs claim was designed to protect "trade secrets" they developed in Alabama, stored on servers in the state, and disclosed to Metcalf (the "confidentiality agreement").[5] Metcalf returned the agreements to Alabama for Leitner to countersign on the plaintiffs' behalf. The confidentiality agreement

---

[4] The court notes Metcalf testified he was an independent contractor, as opposed to an employee.

[5] The court places the term trade secrets in quotation marks because testimony elicited during the hearing on the pending motion to dismiss cast doubt on whether the plaintiffs possess legally protected trade secrets.

identified Metcalf as a Utah resident. Neither agreement included a forum selection clause or choice of law provision.

Metcalf described the plaintiffs collectively as "very much a virtual office." Metcalf himself performed his job responsibilities remotely from his own home office in Utah. His colleagues were spread out across the country. Metcalf's recollection is that Leitner and one other person were the only of the plaintiffs' employees based in Alabama. Metcalf participated in regular virtual meetings with a team of people, but the colleague with whom he communicated most often was based in Arizona. Metcalf traveled to Alabama on only two occasions, each time to attend a mandatory meeting conducted by the plaintiffs. For each meeting, he flew in one day, stayed overnight, and flew out the following day.

Metcalf resigned from his position as the plaintiffs' Financial Director on March 1, 2023, to accept a position as the Director of Acquisitions for the Hearthfire defendants. The Hearthfire defendants are engaged in a business similar to that of the plaintiffs. The sole member of Hearthfire Capital is Hearthfire Holdings, and the members of Hearthfire Holdings are Sergio Altomare and Corrin Altomare, who are residents and citizens of Pennsylvania. Each Hearthfire defendant has its main office in Pennsylvania. The Hearthfire defendants do not do, and have never done, business in Alabama. They have no managers or employees who reside in Alabama. A representative of the Hearthfire defendants reached into Utah to recruit Metcalf.

5

The plaintiffs allege Metcalf disclosed their "trade secrets" to the Hearthfire defendants and that the Hearthfire defendants knew or should have known Metcalf was prohibited from doing so. (*See generally* Doc. 1-2).[6] The plaintiffs further allege that, "[u]pon information and belief, Metcalf and [the] Hearthfire [defendants] acted in concert with one another to misappropriate [the plaintiffs'] [t]rade [s]ecrets." (Doc. 1-2 at 8). According to the plaintiffs, they have lost, and the Hearthfire defendants have gained, a competitive advantage in their shared industry as a consequence of the disclosures. (*See generally* Doc. 1-2).

Based on these allegations, the plaintiffs assert against Metcalf and the Hearthfire defendants claims for violation of the Alabama Trade Secrets Act and civil conspiracy. (Doc. 1-2 at ¶¶ 24-34). They additionally assert claims against Metcalf for breach of contract, indemnity, and breach of fiduciary duty. (Doc. 1-2 at ¶¶ 35-49). Finally, the plaintiffs seek an injunction prohibiting further disclosure or use of their "trade secrets" by Metcalf or the Hearthfire defendants. (Doc. 1-2 at ¶¶ 50-54).

## IV. Discussion

There are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). Specific is the only type of personal jurisdiction at issue here. An Alabama federal district court

---

[6] Metcalf and the Hearthfire defendants deny these allegations.

6

may exercise specific personal jurisdiction over a non-resident defendant if the exercise satisfies federal constitutional due process requirements. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).[7] The exercise of specific personal jurisdiction satisfies federal due process requirements if (1) a plaintiff's claims arise out of or relate to one of the defendant's contacts with the forum state, (2) the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and (3) the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *SkyHop Techs.*, 58 F.4th at 1229 (internal quotation marks omitted). A plaintiff bears the burden of establishing the first two requirements. *Id.* at 1229.[8] If a plaintiff succeeds in making the showing, the burden shifts to the defendant to make a compelling case the exercise of jurisdiction would be improper. *Id.*[9]

---

[7] The inquiry typically is framed as whether (1) there is a basis for asserting personal jurisdiction over a defendant under the relevant state's long-arm statute and (2) whether the exercise of personal jurisdiction over a defendant satisfies federal due process requirements. *See, e.g., SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). However, Alabama's long arm-statute permits the exercise of personal jurisdiction over a defendant "to the fullest extent" permissible under the U.S. Constitution. *Sloss Indus. Corp.*, 488 F.3d at 925. Therefore, the two-pronged inquiry collapses into a single question. *Id.*

[8] A defendant's contacts with the forum state need not directly cause a plaintiff's claims for the first requirement to be satisfied. *Id.*

[9] In determining whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, a court considers (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, and (4) the judicial system's interest in resolving the dispute. *Id.* at 1231.

There are two tests for determining whether a defendant purposefully availed himself of the privilege of conducting activities in the forum state. The "minimum contacts test" – the traditional test – identifies all the defendant's contacts with the forum state and asks whether, individually or collectively, the contacts (1) are related to the plaintiff's claim, (2) involve an act by which the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and (3) are such that the defendant should reasonably anticipate being haled into court in the forum state. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022). The "effects test" contemplates that a non-resident defendant's single tortious act may establish purposeful availment. *Id.* The test is met when the tortious act was intentional, aimed at the forum state, and caused harm the defendant should have anticipated would be suffered in the forum state. *Id.*

An alternative to the analytical framework set out above is the conspiracy theory of jurisdiction. *J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375 (11th Cir. 2012) (noting Alabama courts have adopted conspiracy theory of personal jurisdiction) (citing *Ex parte Reindel*, 963 So. 2d 614, 622-24 (Ala. 2007)). The elements of a conspiracy under Alabama law are (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means. *Id.* at 373 (citing *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000)). To establish personal jurisdiction under a conspiracy theory, a plaintiff must

plead with particularity the conspiracy and the overt acts taken within the forum in furtherance of the conspiracy. *Id.* at 375 (citing *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001)).

The plaintiffs have failed to establish personal jurisdiction by a preponderance of the evidence under the minimum contacts test, the effects test, or the conspiracy theory.[10]

### A.   Conspiracy Theory of Personal Jurisdiction

The sum total of the conspiracy allegations made in this case is the assertion that "[u]pon information and belief, Metcalf and [the] Hearthfire [defendants] acted in concert with one another to misappropriate [the plaintiffs'] [t]rade [s]ecrets." (Doc. 1-2 at 8). Judge Steele characterized a substantially similar statement made in *Pro. Locate v. Prime, Inc.*, as the "most superficial of conspiracy allegations" and held it was "categorically inadequate to trigger the conspiracy theory of personal jurisdiction." 2007 WL 1624792, at *3 (S.D. Ala. June 4, 2007). The same is true here.

### B.   Effects Test

The intentional tortious acts alleged by the plaintiffs are Metcalf's disclosure of the plaintiffs' "trade secrets" to the Hearthfire defendants and the Hearthfire

---

[10] More precisely, with respect to the traditional framework the plaintiffs have failed to demonstrate the second federal due process requirement – purposeful availment. The court declines to consider the first or third requirements.

9

defendants' knowing use of the "trade secrets" to their advantage. Assuming there was a disclosure, Metcalf made the disclosure from, and directed it to, a state other than Alabama. This fact undermines any argument Metcalf aimed intentional tortious conduct toward Alabama. *See Drayton Enters., L.L.C. v. Dunker*, 142 F. Supp. 2d 1177, 1183-86 (D.N.D. 2001) (holding exercise of personal jurisdiction over non-resident defendant alleged to have disclosed his former employer's trade secrets to his current employer was improper where, *inter alia*, any disclosure was made outside forum). Assuming further that the Hearthfire defendants knowingly used the "trade secrets" to their advantage, the use occurred and the advantage accrued outside Alabama.[11] This fact undermines any argument the Hearthfire defendants aimed intentional tortious conduct toward Alabama. *Cf. Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir. 2008) (holding Tennessee defendant's use of plaintiff's trademarked name and picture on website accessible in Florida entailed commission of intentional tort aimed at Florida and, thereby, satisfied effects test and allowed Florida district court to exercise personal jurisdiction over defendant).

The plaintiffs emphasize they felt the effects of the alleged disclosures in Alabama. However, the fact that the effects of intentional tortious conduct are felt

---

[11] The court emphasizes it makes no conclusion the plaintiffs possessed information subject to trade secret protection or any finding Metcalf disclosed, or the Hearthfire defendants used, trade secrets held by the plaintiffs.

in the forum state, standing alone, does not allow a court in the forum state to exercise personal jurisdiction over the alleged tortfeasor. The effects test requires not only that the effects of intentional tortious conduct have been felt in the forum state but also that intentional tortious conduct responsible for the effects have been aimed at the forum state. *See Del Valle*, 56 4th at 1276 (articulating test).[12] That additional requirement is lacking here. Therefore, the effects test does not support the court's exercise of personal jurisdiction over the defendants.

C.  **Minimum Contacts Test**

1.  **Metcalf**

Apart from the alleged intentional tortious conduct discussed above, the plaintiffs identify as Metcalf's contacts with Alabama that he contracted with, and worked for, Alabama-based entities (the plaintiffs); was trained from their Alabama office; communicated with Leitner, their sole member and manager, in Alabama;

---

[12] *See also IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 263 (3d Cir. 1998) ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy [the effects test]. . . . "[T]he plaintiff[] [must] point to other actions that adequately demonstrate[] that the defendants targeted (or "expressly aimed" their conduct at) the forum, and thereby show[] that the forum was the focal point of the tortious activity."); *DocRX, Inc. v. DOX Consulting, LLC*, 738 F. Supp. 2d 1234, 1250 (S.D. Ala. 2010) (citing *IMO Indus.* favorably); *cf. Ex parte Gregory*, 947 So. 2d 385, 394-96 (Ala. 2006) (recognizing "most courts define the [effects] test as requiring something more than mere awareness that one's intentional acts will cause harm in the forum state" and adopting the same requirement); *Ashton v. Florala Mem'l Hosp.*, 2006 WL 2864413, at *10 (M.D. Ala. Oct. 5, 2006) (same).

and obtained knowledge of their "trade secrets" developed and stored on servers in Alabama.

First, the simple act of contracting with the Alabama-based plaintiffs does not constitute purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Diamond Crystal Brands, Inc. v. Food Movers, Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) ("[I]t is settled that entering into a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test.") (citing *Burger King*). Counsel for the plaintiffs asserted during the hearing that, in addition to the fact that Alabama-based entities were parties to the employment agreement and confidentiality agreement, the agreements were formed in Alabama because Metcalf signed the agreements and returned them to the plaintiffs' Alabama headquarters for Leitner to countersign. *See Browning Enter., Inc. v. Rex Iron & Mach. Prods.*, Inc., 504 F. Supp. 2d 1217, 1226 (N.D. Ala. 2007) (noting a contract is formed in the state in which the last act essential to its formation took place). The court assumes the legal accuracy of the assertion for present purposes. The court further assumes formation of the agreements in Alabama would require the agreements to be governed by Alabama law. *See id.* (noting Alabama choice of law

rules require that a contract is governed by the laws of the state where it is made). While the court concedes formation of a contract in the forum state is a factor that weighs in favor of, as opposed to against, the exercise of personal jurisdiction over a non-resident defendant who is party to the contract, the factor is a "minor" one. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1062 n.4 (11th Cir. 1986). Moreover, the fact that the law of the forum state would govern an agreement is "significant" for jurisdictional purposes only where the parties to the agreement expressly have selected the forum state's law by including a choice of law provision in the agreement. *Browning Enter., Inc. v. Rex Iron & Mach. Prods.*, Inc., 504 F. Supp. 2d 1217, 1227-28 (N.D. Ala. 2007). That is not the case here. The employment agreement and confidentiality agreement are silent on the choice of law issue. *See id.* at 1227-28 (holding under similar circumstances that the choice of law issue did not control the jurisdictional issue).

Second, the fact that Metcalf worked for entities based in Alabama, standing alone, does not constitute purposeful availment. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("Our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Courts considering the circumstances under which an employee working remotely from one state for an employer based

13

in another is subject to personal jurisdiction in the other state have looked beyond the location of the employer's headquarters to answer the question. Relevant considerations include whether the employee proactively sought a position with the employer and whether the employee held himself out to be a resident of the state where the employer is based.[13] They also include the length of the employment relationship, the extent of the employee's travel to the state where his employer is based, and the frequency of the employee's communications with colleagues in that state.[14] None of the considerations supports this court's exercise of personal jurisdiction over Metcalf. Metcalf did not proactively seek employment by the plaintiffs. The plaintiffs, through Leitner, reached out to Metcalf in Utah and

---

[13] *See NContracts, LLC v. Holmberg*, 2022 WL 17724148, at *6-10 (M.D. Tenn. Dec. 15, 2022) (holding exercise of personal jurisdiction over non-resident defendant who worked remotely from California for Tennessee-based employer was improper where, *inter alia*, defendant did not proactively seek position with Tennessee employer but rather became employee of the company due solely to an acquisition); *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 493-94 (E.D. Pa. 2021) (holding exercise of personal jurisdiction over non-resident defendant who worked remotely from New Jersey for Pennsylvania-based employer was proper where, *inter alia*, defendant marketed herself as Pennsylvania resident by applying for job with Pennsylvania address on her resume).

[14] *Compare Env't 360, Inc. v. Walker*, 713 F. Supp. 3d 442, 448 (M.D. Tenn. 2024) (holding exercise of personal jurisdiction over non-resident defendant who worked remotely from Florida for Tennessee-based employer was proper where, *inter alia*, defendant was employed by employer for seven years and, during that time, made repeated trips to Tennessee for company business – at least 12, totaling 29 days – and maintained lines of communication with employer in Tennessee), *with TorcUp, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 527 (E.D. Pa. 2019) (identifying contacts of non-resident defendant who worked remotely from Texas for Pennsylvania-based employer as "brief check-ins" with Pennsylvania-based manager and human resources employees and four-day training session in the state and holding these contacts were too attenuated to support exercise of personal jurisdiction over defendant), *and NContracts, LLC*, 2022 WL 17724148, at *6-10 (holding exercise of personal jurisdiction over non-resident defendant who worked remotely from California for Tennessee-based employer was improper where, *inter alia*, defendant only traveled to Tennessee twice for training sessions totaling 10 days).

recruited him to be their Financial Director. Metcalf did not hold himself out to be an Alabama resident. He held himself out to be a Utah resident, and the confidentiality agreement expressly recognized his Utah residency. Metcalf's employment by the plaintiffs lasted approximately six months, a relatively short amount of time, and during that time Metcalf made only two, one-day trips to Alabama and communicated primarily with a colleague based in Arizona.

Third, credible testimony regarding the extent of Metcalf's communications with the plaintiffs' Alabama office was lacking. Metcalf acknowledged during the hearing that he received training on the plaintiffs' processes and maintained some communication with the plaintiffs' Alabama office, but counsel for the plaintiffs did not elicit more precise testimony regarding the training or the quantity of communications. This deficiency, coupled with Metcalf's testimony most of his communications were with a colleague based in Arizona, precludes a finding Metcalf reached out to the plaintiffs in Alabama with frequency that would be jurisdictionally meaningful.

Finally, Metcalf's mere possession of "trade secrets" developed and stored in Alabama does not constitute purposeful availment. *See Dow Corning Corp. v. RSI Silicon Prod., LLC*, 2010 WL 4723428, at *7 (E.D. Mich. Nov. 15, 2010) (holding allegation only that defendants possessed trade secrets that were developed in forum state was insufficient to demonstrate purposeful availment); *Drayton Enters.*, 142 F.

15

Supp. 2d at 1183-86 (holding exercise of personal jurisdiction over non-resident defendants – plaintiff's former employee and his current employer – was improper, even though employee obtained trade secrets in forum state). As stated, assuming there was a disclosure, Metcalf made the disclosure from, and directed it to, a state other than Alabama.

On the whole, Metcalf's contacts with Alabama are too few and attenuated to have served as fair warning to him that he could be subject to suit in the state.

### 2. Hearthfire Defendants

The Hearthfire defendants are Pennsylvania-based entities that do not do, and have never done, business in Alabama. They have no members, managers, or employees who reside in Alabama. They hired Metcalf by reaching into Utah to recruit him. *Compare Drayton*, 142 F. Supp. 2d at 1183-86 (holding exercise of personal jurisdiction over current employer of plaintiff's former employee was improper where, *inter alia*, non-resident employer did not reach into the forum state to recruit employee), *with Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc.*, 2020 WL 3399903, at *4-6 (S.D. Iowa Mar. 17, 2020) (holding exercise of personal jurisdiction over non-resident defendant was proper where, *inter alia*, defendant reached into forum state to hire competitor's employee, who was a forum state resident). The plaintiffs allege the Hearthfire defendants received the plaintiffs' "trade secrets" developed in Alabama and knowingly used them to their

16

advantage, but the court has explained the mere possession of trade secrets developed in the forum state does not constitute purposeful availment and has noted that, assuming the Hearthfire defendants knowingly used the plaintiffs' "trade secrets" to their advantage, the use occurred and the advantage accrued outside Alabama. This leaves Metcalf as the Hearthfire defendants' connection to Alabama. If Metcalf's contacts with Alabama are too attenuated to support the court's exercise of personal jurisdiction over him, the Hearthfire defendants' "contact" with Alabama as embodied by Metcalf is too attenuated by half.

## V. Conclusion

For the reasons stated above, court will grant the defendants' motion to dismiss (Doc. 4) and dismiss this action without prejudice. A separate order will be entered.

**DONE** this 9th day of January, 2025.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE